# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DARRYL L. WEBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09-0607-CV-W-FJG |
| | ) |
| MARK ONE ELECTRIC COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Mark One Electric Company's Motion for Summary Judgment (Doc. No. 50) and Plaintiff Darryl Weber's Motion for Summary Judgment (Doc. No. 53). Weber makes the following three claims: (1) hostile work environment based on race; (2) hostile work environment based on age; and, (3) retaliatory discharge.

### I.  Plaintiff's Motion for Summary Judgment

The Amended Scheduling Order (Doc. No. 40) required the parties to file motions for summary judgment by July 1, 2010. Plaintiff's Motion for Summary Judgment is dated July 2, 2010, but was not filed with the Court until July 19, 2010.[1] Plaintiff did not request an extension of the deadline to file his Motion for Summary Judgment, yet plaintiff filed his Motion eighteen days late, without explanation. Accordingly, the Court hereby **STRIKES** plaintiff's Motion for Summary Judgment (Doc. No. 53). See Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005) (affirming district court's enforcement of

---

[1] The Court notes plaintiff sent his Motion for Summary Judgment to the Court via fax on July 2, 2010; however, plaintiff had been advised that he could not file papers in his case via fax or email, and he had made proper filings in his case prior to the Motion for Summary Judgment (See CM/ECF Docket Entry # 52).

deadline governing pro se plaintiff's late submission of a response to a motion for summary judgment); see also Schooley v. Kennedy, 712 F.2d 372, 373 (8th Cir. 1983) (declaring pro se parties are not excused from complying with procedural and substantive law).

## II.     Defendant's Motion for Summary Judgment

Also pending is defendant's Motion for Summary Judgment, to which plaintiff did not file Suggestions in Opposition or any responsive pleading. Defendant's Motion for Summary Judgment sets forth 105 statements of uncontroverted facts, each of which is supported by a reference to either a deposition or an exhibit. Local Rule 56.1(a) for the Western District of Missouri states in part:

> Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and if applicable, shall state the paragraph number in movant's listing of facts that is disputed. All facts set forth in the statement of movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.

In Bankfirst v. Mortgage Direct, No. 07 C 3592, 2008 WL 4279980, *2 (N.D.Ill. Sept. 17, 2008), the Court stated, "Courts are not 'obliged in [the] adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions.'" Id. at *2 (citing Walridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994)). Because Weber filed no opposition to defendant's Motion for Summary Judgment, and, thus, did not controvert any facts set forth therein, the Court hereby deems as admitted all facts set forth in defendant's Motion for Summary Judgment.

### A. Background

Plaintiff Darryl Weber is a 52-year old Black male who worked as an apprentice electrician for Mark One Electric Company from June 20, 2008 until August 8, 2008. During the first four weeks of his employment, plaintiff worked at the West Edge project, and on or about July 13, 2009, he was reassigned to work at the J.E. Dunn Headquarters project. The conduct that forms the basis for plaintiff's allegations took place at the J.E. Dunn project, where plaintiff was assigned to work under foreman Jim Engle, who reported to the general foreman for the project, Ted Ewbank.

Engle was responsible for overseeing Weber's work, including the correct and efficient completion of tasks. After about two weeks, Engle raised a concern about Weber's productivity with Ewbank, noting that Weber seemed hesitant to communicate with other trades with whom Mark One's electrician's were required to coordinate, which had on several occasions required work that plaintiff had performed to be redone by plaintiff or other crew members. Mark One expects all of its electricians, apprentices and journeymen to communicate with other crafts on the jobsite to ensure that work progresses efficiently. Ewbank advised Engle not to mention anything to Weber about his productivity immediately, but to give him some additional time to get accustomed to the jobsite and the crew.

On Friday, August 1, 2008, the last day of Weber's third week working at the J.E. Dunn project, Engle had a conversation with Weber regarding his concerns that Weber did not work as productively as other electricians, did not show initiative to seek out tasks to complete, and seemed to avoid communicating with other trades regarding the

3

interaction between the tasks that needed to be completed. Weber reacted in a way that Engle perceived as "very defensive, loud and insubordinate," and plaintiff told Engle that he knew what he was doing, and that he was as good of an electrician as Engle, and that it was not his job to communicate with other trades because he was an apprentice. Neither Weber nor Engle mentioned race during this conversation. Following the conversation, Engle consulted with Ewbank, and they decided to document the discussion but take no further action in the hope that Weber's performance would improve.

On August 6, 2008, Engle again spoke with Weber about his poor work habits. Engle asked Weber if he was feeling okay, and Weber responded that he felt great. Engle then encouraged plaintiff to pick up the pace, which led to a conversation during which Weber objected to Engle's criticism. Engle describes Weber's response as belligerent and insubordinate. Weber told Engle that he worked just as fast as Engle did, that Engle was a bad supervisor, that Engle was on drugs, and was probably on drugs that day, and that he was "going to teach [him] something that [his] daddy didn't." (Weber Depo., Doc. No. 50-A at 134:20-138:6, 150:19-151:10). Plaintiff testified in his deposition that the two talked "as men do" but did not raise their voices or yell, and Weber did not feel threatened. Yet, Engle stated that based on plaintiff's words, actions and body language, he felt that Weber was threatening to cause him physical harm during the conversation. Weber demanded to speak with Ewbank. When Ewbank arrived, plaintiff repeated his allegation that Engle was on drugs, that Engle was a bad supervisor, and said that Engle harassed him by criticizing his performance. Weber repeated to Ewbank that he was going to "teach [Engle] something that his daddy

4

didn't." (Weber Depo., Doc. No. 50-A at 134:20-138:6, 150:19-151:10).[2] Engle and Ewbank both recalled Weber accusing Engle of being racist during the conversation.

Engle and Ewbank were concerned by plaintiff's response to the August 6, 2008 conversation and reported the incident to Rosana Privitera-Biondo, President of Mark One Electric Company. Privitera-Biondo's primary concern was plaintiff's threat to "teach [Engle] something that [his] daddy didn't." She questioned Ewbank and Engle about Weber's remark that Engle was racist, and both responded that they were puzzled by the mention of race, that race had never been an issue on the job site, including use of racial epithets, and that Weber was treated no differently than any other employee on the job site.

Privitera-Biondo decided to terminate Weber's employment on August 8, 2008, based on his violation of Mark One's policy regarding "inefficiency, poor production and poor workmanship," and its policy regarding insubordination," both of which violations may be cause for dismissal. Privitera-Biondo also ordered that Mark One conduct an investigation into Weber's reference of race discrimination.

There are additional facts related to plaintiff's claims of Engle's alleged harassment. Plaintiff bases his harassment claim on Engle's alleged name-calling, misleading, and false criticism. Plaintiff testified in his deposition that Engle used the terms "sunshine," approximately two times, the term "bubba," approximately two times, and the term "old man" on "two or three" occasions. (Weber Depo., Doc. No. 50-A, at 114:4-116:15, 159-162). Weber did not complain to anyone at Mark One about Engle's alleged use of the terms "bubba," "sunshine," or "old man." Engle does not deny that he

---

[2] Weber testified in his deposition that his statement to Engle meant that he was "going to teach him to respect people . . . by [having] him looked at through the process for the harassment." (Weber Depo. Doc. No. 66 at 138:3-14).

5

may have referred to plaintiff as "sunshine," but does not recall doing so. Nonetheless, Engle does not view the term "sunshine" as having any racial connotation, and Engle uses the term freely when people look tired or upset. Engle also does not deny having referred to plaintiff as "buddy," but he does not use the term "bubba" in his everyday vocabulary. Engle does not view the term "bubba" as having any racial connotation.

Plaintiff never complained to anyone at Mark One about age harassment, or the use of the term "old man." Engle recalls having a single conversation about the two individuals' backgrounds with Weber during a break, during which the two discovered that Weber was about five years older than Engle, and Engle jokingly said: "alrighty then 'old buddy' let's get back to work." (Weber Depo., Doc. No. 50-A, at 124:7-127:13; Doc. No. 50-K).

Finally, Weber alleges Engle mislead and falsely criticized him, which contributed to the alleged harassment. Weber stated in his deposition that Engle mislead him several times by instructing him to perform a task, and then would return and state that it was done wrong and had to be done a different way, thereby setting Weber up for failure. (Weber Depo., Doc. No. 50-A, at 117: 20-118:11).

### B. Legal Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue

of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021.

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

### C. Harassment

Weber claims that he suffered a hostile work environment while working for Mark One at the J.E. Dunn project. An employee experiences a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To establish a prima facie case of race or age discrimination based on

hostile work environment, Weber must establish that (1) he is a member of a protected group, (2) he was subject to unwelcome harassment, (3) a causal nexus exists between the harassment and the protected group status, and (4) the harassment affected a term, condition, or privilege of his employment. Singletary v. Mo. Dept. of Corr., 423 F.3d 886, 892 (8th Cir. 2005).

Weber claims that Engle's use of the terms "sunshine" and "bubba" towards him, as well as Engle's undue criticism of his work, constituted unwelcome harassment. Weber also makes issue of the fact that Engle called him "old man." In first considering the plaintiff's claim that he endured a racially hostile work environment and suffered harassment due to his age, the Court looks to any evidence that the alleged harassment he suffered was directed at him because of his race and his age.

Weber's bare allegations that Engle's use of the terms "sunshine" and "bubba" were racially motivated are unsupported, and controverted by Engle's testimony that he uses "sunshine" freely with people of all races and colors, and uses the term sarcastically when people look tired or down in aims of lifting their spirits. (Doc. No. 50-D). Engle further stated that he frequently refers to all of his co-workers as "bud" or "buddy," but did not refer to Weber as "bubba," as that is not a word he views as related to race, but nonetheless, does not use the term in his everyday vocabulary. (Doc. No. 50-D). Similarly, Engle testified to the conversation with Weber, which concluded in Engle stated, "common (*sic*) then old buddy, let's get back to work." (Doc. No. 50-D).

In addition, Engle was a foreman, and, accordingly, was responsible for Weber's oversight and productivity. The facts indicate that Engle's criticism of Weber's work was constructive and objectively reasonable. Importantly, Weber never voiced a complaint

to anyone at Mark One or his local union[3] that he felt he was being mistreated or harassed in any way, either due to name-calling or racially motivated criticism. His failure to report any alleged misconduct by Engle strongly suggests that Weber did not perceive any name calling or other factors as offensive in nature.

Weber has failed to produce any evidence that suggests even a remote causal nexus between the alleged harassment and the protected class of race or age, and the Court finds the complained of conduct was not severe or pervasive enough to create an objectively hostile work environment. See Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 567-68 (8th Cir. 2000) (citing Williams v. City of Kansas City, Mo., 223 F.3d 749, 753 (8th Cir. 2000) ("[P]laintiff must show that she was singled out because of her gender [or race], and that the conduct was severe and pervasive."). Accordingly, defendant's Motion for Summary Judgment as to Weber's claim of hostile work environment based on race and age under Title VII is hereby **GRANTED**.

### D. Retaliation

Weber claims he was unlawfully terminated from his employment as an apprentice electrician at Mark One after he raised his concerns about Engle with the general foreman, Ted Ewbank, on August 6, 2008.

Title VII protects employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006). A plaintiff claiming retaliation need not establish the conduct he opposed was actually discriminatory under the law, but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law. See Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1195

---

[3] Weber is a member of the Electrical Joint Apprenticeship and Training Program of the IBEW Local 124.

(8th Cir. 2001). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between his protected conduct and the adverse employment action. EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003).

The threshold issue is whether Weber engaged in protected activity. More precisely, the Court inquires whether Weber has shown that he "had a good faith, reasonable belief that the underlying challenged conduct violated [Title VII.]" Backhtiari v. Lutz, 507 F.3d 1132, 1137 (8th Cir. 2007) (citing Buettner v. Arch Coal Sales Co., 216 F.3d 707, 714 (8th Cir. 2000). The underlying conduct here was Weber's claim that he suffered a hostile work environment. As stated above, an actionable claim for a hostile work environment requires that plaintiff show "the workplace is permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21.

On August 6, 2008, following an initial discussion with Engle, Weber requested to speak with Ewbank regarding his claims that Engle unfairly criticized his performance on August 1 and August 6, 2008. On both occasions, Engle criticized plaintiff for a lack of productivity, initiative and communication with other trades. Again, Weber never mentioned to Ewbank or anyone else at Mark One anything about Engle's alleged use of the terms "sunshine," "bubba," or "old man," and Weber's perception that those terms were derogatory or severely offensive with regard to his race or his age. As such, Weber's complaint communicated what Weber perceived as Engle's undue criticism of his work performance, but not any indicia of racial animus.

The Court finds no reasonable jury could find that Weber had a reasonable or good faith relief that the conduct he opposed violated Title VII, and, accordingly, Weber

10

has failed to satisfy the first element for establishing a claim for retaliation. See Brannum v. Mo. Dept. of Corr., 518 F.3d 542, 548-49 (affirming dismissal of retaliation claim based on a "single, relatively tame comment [that was] was insufficient as a matter of law to support an objectively reasonable belief it amounted to unlawful sexual harassment."). Because Weber did not engage in statutorily protected conduct by raising his complaints of undue criticism of his work performance to Ewbank, the Court hereby **GRANTS** defendant's Motion for Summary Judgment as to Weber's retaliation claim.

### III. CONCLUSION

Based on the foregoing, the Court rules as follows:

(1) The Court hereby STRIKES Plaintiff Darryl Weber's Motion for Summary Judgment, as it was filed eighteen days beyond the given deadline;

(2) Defendant Mark One's Motion for Summary Judgment on plaintiff's claims of (1) hostile work environment based on race, (2) hostile work environment based on age, and (3) retaliatory discharge, is **GRANTED** as to all claims.

**IT IS SO ORDERED.**

Date: October 4, 2010  **/s/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
  Chief United States District Judge